## Charles, et al. v. Daniels, et al.

(Decided October 21, 1910.)

### Appeal from Pike Circuit Court.

Executors and Administrators—Action to Sell Land—Purchase by Executor—Deed Made—Petition For ReSale—Alleged Fraud—Resale and Accounting.—In an action by Mary Daniels as administratrix of her deceased husband to sell his land to pay his debts, there being no personal estate, a sale was ordered and the land was purchased by her at $1,780.69, reported to court and confirmed. Later a suit was filed by the infant children of deceased to set aside the sale, alleging there were no debts against the estate and that the suit by their mother was a fraudulent com-

bination between her and her two sons to procure a sale that she might buy it in; that there were infant heirs on whom no process had been served, and that she had paid for the land out of money of the estate in her hands as administratrix, and that she held the land as trustee for her children. On final trial the court held that she being the administratrix of the estate and the guardian of the infant children she held the land for the benefit of the estate, but that she paid the purchase price $1,780.69 out of her own means. The court set the sale aside and ordered a resale of enough of it to repay her the purchase price, $1,780.69, with interest, that she should be charged with a reasonable rent on it during the time she held it and for the value of any timber cut therefrom.

CASSIUS M. WHITT and P. B. STRATTON for appellant.

J. S. CLINE and BUTLER & MOORE for appellee.

OPINION OF THE COURT BY JUDGE HOBSON.

William Daniels died in the spring of the year 1900, leaving surviving him his widow, Mary Daniels and thirteen children. He owned at his death a tract of 800 acres of land. The widow, Mary Daniels, on April 25, 1900, qualified as administratrix of his estate and as guardian of the infant children, the majority of the children being then infants. In the fall of that year, Nancy Charles, one of the daughters, and John Charles, her husband, filed a suit in the Pike circuit court for the division of the land between the children, and in that case at the January term, 1901, a judgment was entered directing the land to be divided and appointing commissioners for that purpose. Before the judgment was executed on October 5, 1901, Mary Daniels as administratrix brought a suit to settle the estate, alleging that there was no personal property, and that a sale of the land would be necessary to pay the debts. On the same day she also filed an action to set aside the judgment in the partition suit on the ground that it had been entered prematurely. In the suit to settle the estate of the decedent, an order was entered for the creditors to prove up their claims before the commissioner. The commissioner took proof and filed a report showing the debts against the estate, and at the October term, 1902, the commissioners' report having been confirmed, a judgment was entered for a sale of the land or so much of it as was necessary for the payment of the debts. The sale was made and at the sale Mary Daniels bought the

property for $1,780.69, the amount directed by the judgment to be made. The sale was reported to the court and confirmed on February 6, 1903. After the sale had been confirmed a controversy arose between Vicy Daniels one of the daughters, and her mother, Vicy claiming that her mother had assigned to her her bid for the land. On February 18, 1904, a deed was made to the mother and the daughter then brought a suit to set aside the deed. This case progressed to a final hearing; the circuit court dismissed the daughter's petition. The daughter appealed to this court. On the appeal this court adjudged the daughter a lien for a sum of money which she had paid her mother, but refused to disturb the deed which was made to the mother. Soon after this litigation was concluded the present action was brought on September 7, 1907, by Nancy Charles and ten of the other children against their mother and the other two children, setting up the facts above stated. They alleged that there were in truth no debts against the estate and that the suit brought by their mother to settle the estate was a result of fradulent combination between her and the two sons who were joined with her as defendants, to procure a sale of the land so that the mother might buy it in; that a number of the children were infants living with their mother, and the process was not served on them; that the mother had paid for the land out of the money of the estate which she had in her hands as administratrix and as guardian, and that at the time of her purchase of the land, she was both administratrix and guardian of the infant children and having bought the land in the suit brought by her as such administratrix, her purchase made her a trustee for the children; and that she so held the land under her purchase as trustee for them. The allegations of the petition were controverted by an answer; the issues were made up and proof was taken. On final hearing the court adjudged that Mary Daniels being the administratrix of the estate of her husband, held the land she purchased in the suit to settle the estate for the benefit of the estate, but that she had paid the purchase price, $1,780.69, out of her own means. He set the deed to her aside, and ordered the land sold, or enough of it to pay her the $1,780.69, with interest. From this judgment the plaintiffs appeal, and Mary Daniels prosecutes a cross appeal.

The record shows that the claims allowed in the suit to settle the estate were properly proved up, and the

proof before us fails to show that the administratrix did anything wrong in bringing that suit, or in suffering the judgment to be entered there. The proof now offered when taken in connection with the proof that was there before the court, is not sufficient to warrant the rejection of the claims.

The proof does not warrant the conclusion that Mary Daniels paid for the land out of the estate in her hands as administratrix or as guardian. To sustain the petition on this ground more definite proof is necessary than was that furnished in this record, especially in view of the fact that all the parties have acquiesced so long in the judgment rendered in the settlement case, which was based upon the idea that there was no personal estate in the hands of the administratrix, and a number of the children were then of age, and knew all the facts as to what estate there was.

But Mary Daniels being both the guardian of her infant children and the administratrix of her husband's estate cannot be permitted to buy, in the settlement suit which she brought as administratrix, her husband's land and hold it in her own right. It has been often held that a purchase by an administratrix or guardian under such circumstances inures for the benefit of the beneficiaries of the estate, and that the purchaser holds the property as trustee for them. When the deed to Mary Daniels was set aside she was properly adjudged a lien on the land for the money that she had paid. In any view of the case she is entitled to be subrogated to the rights of the creditors whose debts she paid. The proof shows that the land is valuable for the timber on it and for the coal under it. It has developed that there is a fine vein of coal under the land, and a railroad having been built recently in the vicinity, the property has become more valuable than formerly. This seems to be the cause of the continued litigation over it; but while she is entitled to a lien on the land for the money that she paid with interest, she should account for what she had received from the land, and she should be charged with a reasonable rent on it during the time that she has enjoyed it. It appears from the record that $2,000 worth of timber has been cut from the land since she has had it. But the evidence in the record is not sufficient to warrant us in determining how the account should stand between her and the plaintiffs. The court erred in not charging her anything for the use or occupation of the land or for

what she had received from it for timber or otherwise. On the return of the case to the circuit court, it will be referred to a commissioner to take proof and report how the account stands between the plaintiffs and the defendant, Mary Daniels, crediting her by what she has paid with interest from the time she paid it, and charging her with what she has received including rents, as of the dates she received each sum, as in the case of partial payments.

The objection that the infants were not properly served with process in the suit to settle the estate cannot be maintained on the record before us. The presumption is that the circuit court decided properly. The transcript before us does not contain a complete copy of the proceedings in the suit to settle the estate, and in the absence of a complete transcript of that record, we must presume that the circuit court ruled correctly in this matter.

Complaint is made in the briefs as to the court's overruling exceptions to a sale made under the judgment, and reliance is placed on certain proof made then. But none of this is in the record before us. The appeal is from the judgment of sale, and the record does not show the subsequent proceedings.

If the land has been sold under the judgment, and the sale has been confirmed, the judgment confirming the sale is a final order; but Mary Daniels cannot insist on holding the land under the reversed judgment. The remedy for the plaintiffs if the sale is not by consent set aside, is pointed out in Cavanaugh v. Wilson, 108 Ky. 759; Hess v. Deppen, 125 Ky. 424.

The judgment on the cross appeal is affirmed, and on the original appeal it is reversed for further proceedings consistent herewith.