## Luck, et al. v. Schabell, et al.

(Decided December 19, 1919.)

### Appeal from Campbell Circuit Court.

1. Infants—Guardian Ad Litem—Judgment—Collateral Attack.—Unless it affirmatively appears from the record that the person upon whom summons was executed as guardian ad litem for infant defendants under fourteen years of age, had not theretofore been appointed by the clerk as prescribed by section 52 of the Code, the judgment was not void and cannot be collaterally attacked.

2. Infants—Guardian Ad Litem—Appointment.—It will not be presumed from the mere absence in the record of a formal order of appointment that no valid appointment of guardian ad litem was ever made when it affirmatively appears the proper affidavit authorizing appointment by the clerk was filed, that thereafter summons was issued by the clerk against a stranger to the suit as guardian ad litem, who was summoned and answered as

guardian ad litem and was awarded compensation as such, since section 52 of the Code specifies no particular method by which the clerk shall manifest his appointment.

3. Infants—Guardian Ad Litem—Authority to Make Defense.—Where an infant is brought before the court as prescribed by section 52 of the Code, but becomes fourteen years of age pending the action, the authority of the guardian ad litem to defend for him continues until the termination of the cause unless removed by the court, or the infant attains majority.

HEALY & HAWKINS for appellants.

BARBOUR & BASSMAN for appellees.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

This action is an attack upon a judgment of the Campbell circuit court in another suit selling for partition under section 490 of the Code 22 acres of land then owned jointly by the appellant, John Luck, and his four infant children, and which he has since acquired through several mesne conveyances from the purchaser at the judicial sale.

Accompanying the petition in that action, in which John Luck and his second wife, Lillie Luck, were plaintiffs, and his infant children the only defendants, was an affidavit by John Luck that the infant defendants had no statutory guardian and were all under 14 years of age; that their mother was dead, and that he was their father and custodian and plaintiff to the action.

Under section 52 of the Code it is made the duty of the clerk of the court under such circumstances to appoint a guardian *ad litem* for the infants upon whom summons may be served for them. The record shows that upon the same day this affidavit was filed by the plaintiffs the clerk of the court issued summons, regular in form and directed to the sheriff of Campbell county, commanding him to summon M. R. Lockhart, guardian *ad litem* for each of the infant defendants, which summons was regularly returned by the sheriff endorsed: "Executed the above summons this 5th day of December, 1910, on John Luck, an infant 11 years of age; also Margaret Luck, an infant 7 years of age; also Gussie Luck, an infant 6 years of age; also Howard Luck, an infant 2 years of age, by delivering a copy for each and every one of them to M. R. Lockhart, he being guardian *ad litem* for said four minor children."

Thereafter, and before the judgment was entered ordering the land to be sold for partition, M. R. Lockhart filed answer as guardian *ad litem* for each of the infant defendants..

This is all the record discloses with reference to the appointment of M. R. Lockhart as guardian for the infant defendants. The infant defendants in that action are not parties to this action, and no question is involved as to their right to question the correctness of the judgment in the former suit in any of the ways provided by section 391 or 518 of the Code. Neither have the appellees, who were plaintiffs below, attempted a direct attack upon that judgment. The sole question involved is therefore whether it affirmatively appears from the record in the former case that M. R. Lockhart was not appointed as guardian *ad litem,* for unless so the judgment was not void and cannot be collaterally attacked, as is attempted in this action. Bamberger v. Green, 146 Ky. 258; Baker v. Baker, Eccles & Co., 162 Ky. 683; Harrod v. Harrod, 167 Ky. 308; Ratliff v. Childers, 178 Ky. 102; Bentley v. Stewart, 180 Ky. 23; Fraize, et al. v. Walls, 180 Ky. 168; Potter v. Webb, et al., 186 Ky. 25.

It is a familiar rule that infants may not be divested of their title to real estate except by strict compliance with the provisions of the Code. The old record now being considered shows that every provision of the Code was strictly complied with in the sale of this land, unless it shows, as claimed by appellee, that M. R. Lockhart was not regularly appointed as guardian *ad litem* for them. That he was summoned and answered as their guardian and was allowed compensation for performing his services as such, affirmatively appears from the record, but it is insisted that the clerk's appointment of the guardian *ad litem* should have been made by an order signed by him and spread upon the record, or upon the petition or some of the papers in the case, before there could have been a valid appointment by him under section 52 of the Code, and that from the absence in the record of such a formal order of appointment it must be held that it affirmatively appears from the record that no valid appointment of M. R. Lockhart as guardian *ad litem* for the infants was ever made, and that hence the issuance of summons against him as such, the service of summons upon him, his answer, the judgment, sale and confirmation thereof, were all void.

It is only true, however, that the record does not contain a formal order of appointment, but if any presumptions whatever are to be entertained that the clerk performed the duties imposed upon him by law, or in favor of the regularity of the court proceedings and judgment, as is usual when attacked collaterally, then upon this record it certainly would have to be presumed that the clerk, before issuing summons against M. R. Lockhart as guardian *ad litem,* appointed him as such, as it was his duty to have done, and that he did so is the only reasonable inference from the record. To hold otherwise we would have to presume that he issued a summons against M. R. Lockhart as guardian *ad litem* knowing that he had not been appointed as such, which is a presumption not only at variance with his duty as clerk of the court, but contrary to every reasonable inference from the record. The clerk could not have spread an order upon the court's order book, when he made the appointment, nor does the Code provide where or how or by what means he shall manifest his appointment of a guardian *ad litem.*

Unquestionably he could and should have made and spread such an order upon the petition or some paper to be then or later filed with the papers in the case and noted of record by order of the court; but does not his issuance of summons against a stranger to the record as guardian *ad litem,* after affidavit had been filed making it his duty to make the appointment, attest his appointment of such stranger as the guardian *ad litem* sufficiently at least to render it impossible to assert that the record affirmatively shows that no such appointment was made by him? We think it does, and that the chancellor erred in holding otherwise.

There is no analogy between the clerk's appointment of a guardian *ad litem* under section 52 and his making a warning order under subsection 7 of section 57 of the Code, because in the latter case he is by express provision of the Code required to enter the warning order upon the petition. There is, moreover, a good and sufficient reason for this difference in practice recognized by the Code. The warning order itself takes the place of a summons, determines the date of constructive service and commencement of the action, and gives the court jurisdiction over a non-resident's property, which is fixed and evidenced only by the clerk's order, hence it must be spread upon the petition as required by the Code. Hyden

v. Calames, 161 Ky. 593. The appointment of a guardian *ad litem* does not accomplish any of these results. Process must thereafter be issued against him, if the infants are under 14 years of age, to commence the action, and the process must be served upon him to give the court jurisdiction of the infants' property. These important facts are established not from the clerk's order alone, but rather from the summons and its service. It must have been for these reasons the legislature required the one order to be spread on the petition but not the other. At least it is imperative that the warning order be entered on the petition, as only thus may it be evidenced, while the clerk's order of appointment of a guardian *ad litem* may be proven by any competent evidence since there is no provision for its being made a part of the record in the case.

The clerk's authority under the Code to make such an appointment in this case is admitted. That he exercised this authority and made the appointment before issuing the summons, as he could have done validly only after such an appointment has been made by him, is proven by the record, not, however, by primary evidence but by evidence which upon collateral attack must be considered competent and satisfactory.

The cases relied upon by appellee—Searcy's Heirs v. Morgan, 4 Bibb. 96; Iron's Ex'x. v. Christ, 3 A. K. Mar. 143; Shields v. Craig, 1 T. B. Mon. 72; Roy v. Allen's Admr., 118 S. W. 981, and Fraize v. Walls, 180 Ky. 168, are not in point, since in each the appointment of the guardian *ad litem* should have been made, not by the clerk, as here, but by the court. The court's authority to make such an appointment is conferred by section 38 of the Code, and can be exercised only *after* service of process upon the infant in conformity with section 52 of the Code. The clerk's authority to make such an appointment is conferred by the latter section and can be exercised only upon the filing of a prescribed affidavit manifesting conditions necessitating the appointment *before* service of process can be had upon the infant.

In the cases cited the court's authority to make the appointment was questioned and determined. In this case the clerk's authority to make the appointment is conceded.

Appellees also contend the orders of sale and confirmation were void as to at least one of the infants who was

over 14 years of age at the time the orders were entered, but having been brought before the court while under 14 years of age in the manner prescribed by the Code, he was in court and the authority of his guardian *ad litem* to defend for him in that action continued until the termination of the cause, unless removed by the court or terminated by the arrival of the infant at the age of majority. Staggenborg v. Baliey, 80 S. W. 1109.

This manner of serving process upon infants under 14 years of age is provided for under article 1 of chapter 2 of the Code treating of ''actual service,'' and is a substituted service that in effect and law is actual. The status of an infant or the method of his defense is not changed by his becoming 14 years of age; he is equally impotent to defend for himself, and defense must be made for him in exactly the same way after as before he is 14 years old. The method of service on him only is different, the purpose and effect just the same. He must be brought into the case in accordance with the manner prescribed by law for his age when the suit is begun against him in order to give the court jurisdiction of his person and property. This jurisdiction once acquired by a court having jurisdiction of the subject matter continues until the action is terminated, without further or additional service, and he is bound by the court's judgment, subject only to his right of appeal or a new trial just as an adult, except the time is prolonged for him until a certain time after he attains his majority. But under such circumstances the judgment could only be voidable, not void, and even he could not attack it collaterally.

Wherefore the judgment is reversed with directions to dismiss the petition.